**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0101-16T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

J.V.,

     Defendant-Appellant.

_____

> Submitted December 5, 2018 – Decided February 5, 2019
>
> Before Judges Koblitz, Ostrer and Mayer.
>
> On appeal from Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 13-12-1177.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Michele E. Friedman, Assistant Deputy Public Defender, of counsel and on the briefs).
>
> Gurbir S. Grewal, Attorney General, attorney for respondent (Carol M. Henderson, Assistant Attorney General, of counsel and on the brief).

PER CURIAM

Defendant appeals from his waiver to adult court, arguing the new waiver statute should have been applied in light of his mental health disability. We agree, and reverse and remand for a new waiver hearing. On May 12, 2013, defendant was charged in a juvenile delinquency complaint with actions that, if committed by an adult, would constitute first-degree attempted murder, N.J.S.A. 2C:5-1, N.J.S.A. 2C:11-3(a) (count one); first-degree robbery, N.J.S.A. 2C:15-1(a)(1) (count two); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count three); and third-degree possession of a weapon for unlawful purpose, N.J.S.A. 2C:39-4(d) (count four). On June 4, 2013, the prosecutor filed a motion to waive Family Court jurisdiction over the matter and prosecute defendant as an adult pursuant to N.J.S.A. 2A:4A-26 and Rule 5:2-2.[1]

After a hearing, on October 23, 2013, the court granted the prosecutor's waiver application. Two months later, defendant was indicted on the same four counts as the delinquency complaint, and in October 2014, after a three-day competency hearing, was deemed competent to stand trial. Defendant pled guilty to counts one and two of the indictment and, on September 18, 2015, was sentenced, consistent with the plea agreement, to concurrent terms of eighteen

---

[1] On August 10, 2015, N.J.S.A. 2A:4A-26 was repealed and replaced by N.J.S.A. 2A:4A-26.1, with an effective date of March 1, 2016. See L. 2015, c. 89.

years in prison, subject to an eighty-five percent parole disqualifier pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

The following facts are gleaned from defendant's waiver hearing and subsequent factual basis at his guilty plea hearing. On the afternoon of May 12, 2013, when defendant was seventeen years old, he walked from his home to the Passaic train station carrying a knife, with the intention of robbing someone of either a cell phone or money. Upon arriving at the train station, defendant approached the victim and asked to borrow his cell phone.

The victim was startled at first, but saw that defendant was a "kid" and handed his phone to defendant. Defendant then pretended to make a call, pressing the buttons and holding the phone to his ear while pacing back and forth. After a few moments, defendant walked back to the victim and said he was keeping the phone. They got into a physical fight, with each claiming the other threw the first punch. Defendant stabbed the victim nine times.

After defendant's arrest, he was brought to the police station, where the officers learned that defendant was a juvenile. Defendant's father came to the police station, and defendant was given his Miranda[2] warnings and agreed to

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

speak with the officers. The interview was conducted in Spanish with the aid of a Spanish-speaking police officer, and was video-taped. Defendant confessed. Defendant stated he did not know his birthday, and gave confused or nonsensical responses to some of the Miranda questions.

The prosecutor's statement of reasons submitted in support of the juvenile waiver motion addressed each of the fifteen factors in the Attorney General Juvenile Waiver Guidelines (Guidelines),[3] written in 2000 pursuant to the then-applicable statute, N.J.S.A. 2A:4A-26(f), directing the Attorney General to "develop for dissemination to the county prosecutors those guidelines or directives deemed necessary or appropriate to ensure the uniform application of this section throughout the State." None of these factors require the prosecutor to consider a juvenile's mental or learning disabilities. The prosecutor determined nine factors supported the State's waiver motion: (1) "[n]ature and circumstances of crime"; (2) "[r]ole of the juvenile" – noting defendant "carried out a premeditated, unprovoked, vicious attack on an innocent stranger"; (3) "[g]rave and serious harm to victim or community" – noting "[t]he victim received over sixty stitches," had part of his ear severed and re-attached, leading to

---

[3] Off. of the Att'y Gen., Juvenile Waiver Guidelines, (Mar. 14, 2000), http://www.njdcj.org/agguide/pdfs/AG-Juvenile-Waiver-Guidelines.pdf.

A-0101-16T3

disfigurement, and suffered injury to his vocal cords, affecting his employment as an "on-air radio producer"; (4) "[p]otential for grave and serious harm to victim or community" – noting the attack was committed against a stranger, in broad daylight, in a public space; (5) "[u]se or possession of a weapon" – referring to the kitchen knife; (6) "[n]eed to deter juvenile and others from committing similar crimes" – citing the "brutal nature of [the] attack" and the need to send a message to others; (7) "[n]eed for longer term of incarceration permissible for adults"; (8) "[l]ikelihood of conviction or need for [g]rand [j]ury investigation" – citing three witness identifications, the evidence collected from defendant's person, and defendant's confession; and (9) "victim's request for waiver."

The prosecutor determined six factors did not apply to defendant's case: (1) death of the victim; (2) "[s]eriousness of prior adjudications of delinquency"; (3) "[p]rior waiver and conviction"; (4) "[g]ang involvement"; (5) "history of physical violence indicating substantial danger to others"; and (6) "[i]n cases with codefendants, waiver would avoid injustice." The prosecutor argued that the Guidelines factors supported waiver, and the Family Part judge agreed. Defense counsel then moved for bail, stating that defendant "ha[s] an IQ of

[fifty-eight]," has been "in a special school most his life," and attempted suicide "at least" six times while being held at the juvenile detention center.

Later, at the conclusion of a three-day competency hearing, the Criminal Part judge stated: "[t]here is no doubt that [defendant] is an impaired individual. There is no doubt that he is functioning in the borderline to mild mental retardation range." However, she ultimately found defendant, "though, obviously limited, does have a basic and legally adequate understanding" of the proceedings, standards, and consequences, and was therefore competent to stand trial.

When sentencing defendant, the judge found aggravating factors one, two, three, and nine, and mitigating factor seven. N.J.S.A. 2C:44-1. The judge gave reasons for each factor found.

For aggravating factor three, risk of committing another offense, the judge noted the vicious, premeditated nature of the attack gave her "great concern, if [defendant] was capable of this, that there is a substantial risk of committing another offense." The judge also acknowledged defendant's limited mental functioning and emotional issues, and found that "[t]o the extent [those characteristics] contributed to his behavior, if it did, then that would be part of the risk."

Turning to the mitigating factors, the judge found factor seven, no prior record, applied. In light of the harm to the victim, the judge accorded this factor "very little weight." The judge also explained:

> The difficulties he has had in the past with learning disabilities, borderline functioning, depression, to some extent is a mitigating factor and I think sometimes the same information can be an aggravating factor because it contributes to risk and can be a mitigating factor because he didn't ask for these other issues. So to some extent, that is a mitigating factor.

Defendant raises the following issues:

> POINT I: THIS COURT SHOULD REVERSE THE ORDER WAIVING JURISDICTION TO ADULT COURT AND REMAND THE MATTER FOR A NEW HEARING BECAUSE J.V. IS ENTITLED TO PIPELINE RETROACTIVE APPLICATION OF N.J.S.A. 2A:4A-26.1(c)(3). MOREOVER, EVEN UNDER THE FORMER STATUTE, N.J.S.A. 2A:4A-26, THE PROSECUTOR ABUSED HER DISCRETION IN SEEKING WAIVER, THUS WARRANTING REVERSAL OF THE WAIVER ORDER.
>
> A. IN ACCORDANCE WITH RECENT CASE LAW, THE COURT SHOULD FIND THAT N.J.S.A. 2A:4A-26.1(c)(3) APPLIES RETROACTIVELY IN THIS CASE, AND REMAND THE MATTER FOR A NEW WAIVER HEARING.
>
> B. EVEN UNDER N.J.S.A. 2A:4A-26, THE OLDER WAIVER STATUTE, THE PROSECUTOR ABUSED HER DISCRETION BY OVEREMPHASIZING THE

A-0101-16T3

PURPORTED "PREMEDITATED" NATURE OF THE VIOLENT ASSAULT.

POINT II: THE MATTER SHOULD BE REMANDED FOR RESENTENCING BECAUSE THE SENTENCE IS MANIFESTLY EXCESSIVE AND UNDULY PUNITIVE.

A. THE SENTENCE IMPOSED AGAINST THIS JUVENILE OFFENDER IS UNCONSTITUTIONAL, BECAUSE IT DOES NOT TAKE INTO ACCOUNT THE FACTORS SET FORTH UNDER MILLER V. ALABAMA.[4] MOREOVER, THE COURT ABUSED ITS DISCRETION IN ASCRIBING "VERY LITTLE WEIGHT" TO J.V.'S UNBLEMISHED RECORD AND STATUS AS A YOUTHFUL OFFENDER.

B. THE COURT IMPROPERLY RELIED ON J.V.'S EMOTIONAL AND PSYCHOLOGICAL LIMITATIONS AS A BASIS FOR SIMULTANEOUSLY FINDING AGGRAVATING FACTOR THREE, AND WEIGHING THOSE SAME DEFICIENCIES IN MITIGATION "TO SOME EXTENT."

C. GIVEN THAT A REMAND IS WARRANTED, THE COURT SHOULD ORDER THAT A PSYCHOLOGICAL EXAMINATION BE CONDUCTED PRIOR TO THE RESENTENCING HEARING.

Juvenile waiver decisions are reviewed for abuse of discretion. State in the Interest of V.A., 212 N.J. 1, 25 (2012). The reviewing court looks to

_____

4  567 U.S. 460 (2012).

A-0101-16T3

"whether the correct legal standard has been applied, whether inappropriate factors have been considered, and whether the exercise of discretion constitute[s] a clear error of judgment in all of the circumstances." State in the Interest of J.F., 446 N.J. Super. 39, 51-52 (App. Div. 2016) (quoting State v. R.G.D., 108 N.J. 1, 15 (1987)).  In conducting this analysis, the court must make sure that "findings of fact [were] grounded in competent, reasonably credible evidence, [and] . . . correct legal principles [were] applied . . . ." State in the Interest of A.D., 212 N.J. 200, 215 (2012) (quoting R.G.D., 108 N.J. at 15).

Defendant argues the matter must be remanded for a new waiver hearing in light of the 2015 repeal and replacement of the juvenile waiver statute. Defendant asserts the portions of the new waiver statute at issue here – N.J.S.A. 2A:4A-26.1(b), 2A:4A 26.1(c)(3)(e) and (j) – require the prosecutor to consider his eligibility for special education, as well as mental health concerns, before seeking waiver.  The new statute also directs the prosecutor to consider evidence presented by the accused and the court with regard to these factors.  Thus, defendant may not have been subject to adult sentencing consequences if waiver had been considered under the new framework.  He argues the new statute is ameliorative, and therefore must apply retroactively.  Defendant relies on J.F.,

where we held a different subsection of the new waiver statute applied retroactively.

No published opinion addresses whether N.J.S.A. 2A:4A-26.1(c)(3) – the portion of the juvenile waiver statute at issue here – should be applied retroactively. Two recent published opinions address the retroactivity of other sections of the statute.

In June 2016, we held Section (c)(1) of the new juvenile waiver statute, which raised the minimum waiver age from fourteen to fifteen, applied retroactively. See J.F., 446 N.J. Super. at 55-56. In that case, the State appealed from the trial court's denial of a waiver motion for a juvenile who was fourteen years old at the time of the offense. Id. at 41. The waiver hearing was held on August 13, 2015 – after the enactment of the new juvenile waiver statute, but before its stated effective date. Id. at 52-53. The trial court found the juvenile sufficiently proved a probability of rehabilitation under the version of the juvenile waiver statute in effect at the time of the waiver hearing, which was N.J.S.A. 2A:4A-26. Id. at 42. On appeal, we affirmed for the substantive reasons provided by the trial court, but also held that the amended juvenile waiver statute should apply retroactively, barring defendant from being waived into adult court based on his age. Id. at 42. In so holding, the majority found:

> [t]he revised waiver statute was intended to ameliorate the punitive sentencing previously meted out to adolescent offenders after waiver. The legislative action was also intended to address the treatment needs of children. The increase in the minimum waiver age is part of that emphasis on rehabilitation rather than punishment, a part of the effort to ensure that children do not become prey to adult inmates nor suffer the many societal consequences of an adult criminal record.
>
> [Id. at 55.]

In finding Section (c)(1) to be ameliorative for the purposes of retroactivity, we explained that "a waiver to adult court is part of the extended process of determining the severity of the sentence that will be doled out after a determination that the juvenile has committed an offense." Id. at 58.

Two months after J.F. was decided, our Supreme Court briefly addressed the question of retroactivity of the new juvenile waiver statute, but declined to conduct a "full-blown retroactivity analysis." State in the Interest of N.H., 226 N.J. 242, 249 (2016). In N.H., the State appealed from a trial court's ruling that defendant was entitled to full discovery before the waiver hearing. Id. at 247. The initial decision was issued before the adoption of the new juvenile waiver statute. Id. at 245-47. By the time the appeal made its way to the Supreme Court, however, the new statute had taken effect.

A-0101-16T3

In addressing the retroactivity question, the Court noted there were "no material differences between the parts of the newly enacted and prior statutes which are relevant to this appeal." Id. at 249. Neither version of the statute addressed the extent of discovery to be provided before the waiver hearing. Id. at 253. The Court held that "[a]s a seventeen-year-old charged with very serious acts, [defendant] is covered under both versions of the law. Statutory revisions about the process for the waiver decision do not alter existing law in a material way either. They are largely procedural in nature and encompass prior practice." Id. at 249. The Court addressed Section (c)(3)'s list of factors to be considered in the waiver decision, and noted that "[t]he new waiver law appears to have adopted parts of the Guidelines and case law," id. at 250, and "encompass and expand upon the factors listed in the Guidelines." Id. at 252.

Focusing on the discovery issue, the Court explained that "the waiver of a juvenile to adult court 'is the single most serious act that the juvenile court can perform.'" Id. at 252 (quoting R.G.D., 108 N.J. at 4-5). Given the "critical nature" of this proceeding, the Court held that due process required defendant to be provided with full discovery before the hearing, absent certain extenuating circumstances. Id. at 256. The Court directed that, on remand, the waiver hearing should proceed in accordance with the new waiver statute. Id. at 249.

More recently, we decided the case of an individual who had been waived to adult court and sentenced more than thirty years ago, stating:

> [T]he waiver law was not only the same at the time defendant committed the offense, but also at the time of his waiver, conviction, and sentencing. There is no evidence the Legislature intended the waiver statute to reach concluded cases which have already passed through the proverbial "pipeline." Therefore, our application of the savings statute in C.F.—which we also relied upon in J.F.—has its limits, as demonstrated by this case, in which defendant's direct appeal has long since been concluded.
>
> [State v. Bass, 457 N.J. Super. 1, 11-12 (App. Div. 2018).]

Here, the question is whether the new juvenile statute should be applied to a situation where the defendant was not yet sentenced when the statute was enacted. The waiver statute is ameliorative and thus subject to retroactive application. See J.F., 446 N.J. Super. at 55-56. Any change in the waiver process may affect the severity of the outcome for the juvenile. Moreover, there is no apparent reason why retroactive application of Section (c)(3) would constitute a manifest injustice – nor does the State make such an argument here. Recently, we analyzed the purpose and goals of the savings statute, N.J.S.A. 1:1-15, and held that "we look to the date an offense was committed in determining whether a new law, which discharges, releases or affects an offense, should be

13

applied to that offense, but we look to the date a penalty was incurred to determine whether a new law should discharge, release or affect the penalty for the offense." State in the Interest of C.F., 444 N.J. Super. 179, 188-89 (App. Div. 2016) (emphasis omitted). Here defendant was sentenced after the enactment of the more lenient waiver statute. It is undisputed that defendant has a mental disability which is included in two important factors in the new waiver statute, but is not relevant under the old one.

We remand for reconsideration of waiver by the Family Part judge, after giving defendant an opportunity to present evidence to the prosecutor about the waiver factors concerning his mental health and special education classification, as permitted under our new waiver statute. N.J.S.A. 2A:4A-26.1(c)(3)(e) and (j).

It is in line with the retroactivity we deemed appropriate in J.F. 446 N.J. Super. at 59; cf. N.H., 226 N.J. at 256 (directing that full discovery be provided to a juvenile prior to a waiver hearing). We do not intend by this remand to infer that waiver is or is not the correct outcome. Under these circumstances, defendant should be given the benefit of the new procedures, especially in light of the serious consequences waiver entails. See N.H., 226 N.J. at 253 (referring to the "critical nature of waiver hearings").

14

Reversed and remanded for the prosecutor to determine if the State wishes to proceed with a waiver hearing under the new statute. In the event of an adult conviction, defendant's mental health deficits may only be used in mitigation, and not aggravation of his sentence, absent convincing expert testimony that defendant's mental health interferes with deterrence. See State v. Nayee, 192 N.J. 475 (2007) (remanding by order for the defendant's mental health to be considered under mitigating factor four in light of State v. Nataluk, 316 N.J. Super. 336, 349 (App. Div. 1998), which states that a defendant's mental health problems could be considered a mitigating factor even if a jury rejected the defendant's insanity defense).

Reversed and remanded for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0101-16T3