**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3639-18T1

CALVIN BASS,

     Appellant,

v.

NEW JERSEY STATE PAROLE
BOARD,

     Respondent.

_____

Submitted November 4, 2020 – Decided November 19, 2020

Before Judges Yannotti, Mawla, and Natali.

On appeal from the New Jersey State Parole Board.

John Vincent Saykanic, attorney for appellant.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raska, Assistant Attorney General, of counsel; Suzanne Davies, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Calvin Bass appeals from a March 27, 2019 final agency decision by the New Jersey State Parole Board (Board), denying parole and establishing a future eligibility term (FET) of sixty months. We affirm.

We previously summarized the facts leading to Bass' incarceration when we denied his fourth petition for post-conviction relief challenging his sentence on novel statutory and other grounds. We stated:

> In March 1983, [Bass] and two other minors were arrested for entering the home of an elderly man and fatally beating him with a wooden nail-studded board to near decapitation, while he lay in bed. [Bass] was fourteen years and one month old at the time of the arrest. He was found in possession of the wooden board, as well as two color televisions and an eight-track player belonging to the victim.
>
> Following a competency hearing, the Family Part judge granted the State's motion to waive jurisdiction pursuant to N.J.S.A. 2A:4A-26. Subsequently, a jury convicted [Bass] of first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); second-degree burglary, N.J.S.A. 2C:18-2(b)(2); first-degree robbery, N.J.S.A. 2C:15-1(b); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d).
>
> . . . [Bass'] aggregate sentence was life imprisonment with thirty-five years of parole ineligibility.
>
> [State v. Bass, 457 N.J. Super. 1, 4 (App. Div. 2018).]

In part, Bass claimed his sentence was illegal because he was rehabilitated and the trial court's finding he could not be rehabilitated was erroneous.  Id. at 7.  We rejected the argument, concluding

> [Bass'] sentence is not illegal because he now claims to be rehabilitated as a result of his incarceration.  We do not minimize [his] efforts to rehabilitate himself, which include: [his] role as president of the Lifers Group Juvenile Awareness Program, earning a GED high school equivalency diploma, and success in various institutional programs.  However, consideration of these accomplishments is exclusively the province of the parole board and not a means of collateral attack on [Bass'] sentence—which has been affirmed on direct appeal.
>
> [Id. at 14.]

Bass became parole eligible in July 2018.  In May 2018, a two-member panel issued a decision denying parole.  The panel noted the following mitigating factors: Bass completed opportunities on community supervision without violation; he participated in programs specific to his behavior and institutional programs; institutional reports reflect institutional adjustment; he had attempted to enroll in certain programs but was not admitted; and he had achieved and maintained minimum custody status.

However, the panel found there was a substantial likelihood Bass would commit another crime if released on parole.  It cited the following reasons for

A-3639-18T1

denying parole: the facts and circumstances of Bass' murder offense; his prior offense record, which was extensive and repetitive; the increasingly serious nature of his criminal record; his present incarceration for multiple offenses; his commission of numerous serious infractions in prison; and his insufficient problem resolution.

An in-depth psychological evaluation of Bass was conducted three months before the hearing. The evaluation noted, in discussing the murder, "Bass does offer a sense of regret for his actions in participating in the crime but again strongly denied that he struck this man as noted in the record, indicating this came from his co-defendant in return for a lighter sentence." The evaluation also noted Bass' "performance while on probation, community supervision as a juvenile was described as poor and he has a prior escape charge."

In assessing his risk of re-offense, the evaluation considered Bass' strengths and resources against his risks and weaknesses. It noted he earned his GED and worked responsibly during his incarceration, had family support, showed increased support, despite denying "aspects of violent behaviors of the [murder]" and denying a 2016 infraction, and was generally stable, productive, and had no acute psychiatric concerns. However, the evaluation concluded Bass' prognosis for re-offending was "medium" because of the

A-3639-18T1

significant history of juvenile criminal behavior including violent acts culminating in a horrific, sadistically violent crime . . . . He has not worked or supported himself as an adult, having spent his entire adult life incarcerated. He did poorly when under community supervision and has a prior juvenile escape. He proved easily pliant to negative peer group exposure and comes from a high risk environment. He has significant substance abuse issues. He has a recent 2016 infraction. Evidence of arrogant defiant and antisocial attitudes is noted beginning as a pre-adolescent although these appear somewhat behaviorally muted in recent years.

The psychological testing conducted as part of the evaluation supported these conclusions. The evaluation described Bass' personality profile as follows:

When their lives are under control persons with this profile may be skillful in exploiting the goodwill of others. More characteristically, . . . [t]hey may feel unfairly treated and easily provoked to anger. Their façade of control and sociability may quickly give way to antagonistic and caustic comments, and they may obtain gratification by humiliating and dominating others. . . . Socially repugnant impulses . . . are likely to be discharged directly in precipitous ways, often without guilt.

Deficient in deep feelings of loyalty and displaying an occasional indifference to truth, persons with this profile may successfully scheme beneath their veneer of civility. A guiding principle for these people is that of outwitting others, controlling and exploiting them before they control and exploit them. Carrying a chip-on-the-shoulder attitude, they may exhibit a readiness

to attack those they distrust. If they are unsuccessful in channeling these omnipresent aggressive impulses, their resentment may mount to period of manic excitement or into acts of brutal hostility.

The evaluator concluded Bass was at "moderate risk for future violence if released." The evaluator also found "[t]he likelihood of this inmate successfully completing a projected term of parole is generally fair at best due to constellations of risks and strengths previously identified."

Based on the totality of the record, the panel concluded:

> [Bass] has progressed and his infractions have subsided to a great extent. But his understanding of criminal thinking remains limited. [Bass stated,] "I mean what's done is done. You know? A man was murdered. . . . I don't take pride in that, know what I mean." In speaking about programs, palliative care unfortunately has not appeared to have any impact on his ability to feel the pain of others.

The matter was referred to a three-member panel to establish an FET outside the regulatory guidelines. The panel established a sixty-month FET based on Bass' lack of satisfactory progress in reducing the likelihood of future criminal behavior. The panel determined the reasons for an FET outside the presumptive guidelines included

> the facts and circumstances of the offenses. Namely that [Bass] and [his] accomplices participated in the beating death of an elderly victim during the course of burglarizing his residence . . . . [Bass'] prior offense

6

record is both extensive and repetitive . . . . [Bass was sentenced] for four offenses . . . . [Bass was] previously afforded community supervision as an alternative to incarceration . . . . [D]uring [Bass'] incarceration [he has] committed [twenty-two] infractions, four of which were asterisk (serious) infractions[1].

The panel also based its decision on Bass' "lack [of] insight into [his] criminal thinking and decision-making" and stated he minimized his conduct and has "not sufficiently addressed [his] substance abuse problem." The panel concluded Bass "overly emphasized that [his] accomplice initiated the offense . . . [and o]nly when pressed on the issue, did [he] speak in a conciliatory manner, noting that [he] did nothing to stop [his] co-defendant as he beat the elderly victim causing his death." It further noted Bass "must gain a better understanding as to why . . . [he] chose to willingly participate in the murder of the victim. By focusing on specifics to [Bass'] own decision-making, the . . . panel finds [Bass] will gain a better understanding why [he] behaved in the manner that [he] did."

Bass appealed to the full Board. He challenged the panel's findings that: he failed to cooperate in his own rehabilitation; he would violate the conditions of parole if release; and there was a substantial likelihood he would commit a

---

1 Pursuant to N.J.A.C. 10A:4-4.1, asterisk infractions are "the most serious and result in the most severe sanctions."

crime if paroled. He argued the Board failed to provide him with a Board representative to aid him in the hearing pursuant to N.J.A.C. 10A:71-2.11, and violated due process as a result; and a panel member violated the Board's code of conduct by questioning Bass in an aggressive manner and preventing him from answering a question.

The Board affirmed. It addressed and rejected each of the arguments Bass' counsel raised on his behalf. Regarding the claim the three-member panel failed to consider mitigating factors favoring parole, the Board found "the . . . panel did not make a determination that . . . Bass failed to cooperate in his own rehabilitation or cite his failure to cooperate in his rehabilitation as a reason for denial." The Board rejected Bass' argument that the record lacked evidence to support the panel's finding there was a substantial likelihood Bass would commit a crime if released on parole. The Board stated:

> Pursuant to N.J.A.C. 10A:71-3.11(b)(17), during the time of the hearing, the . . . panel may consider statements given by an inmate reflecting on the substantial likelihood that he will commit another crime. Based on . . . Bass' responses to questions posed by the . . . panel at the time of the hearing, the . . . panel appropriately determined that he exhibits insufficient problem resolution, specifically, that he lacks insight into his criminal behavior, minimizes his conduct and that his substance abuse problem has not been sufficiently addressed. The Board finds that . . . Bass

has been involved in treatment, but has gained little insight from these programs.

The Board recited all of Bass' mitigating efforts, but concluded

> program participation is one factor of many considered by the . . . panel and is not the only indicator of rehabilitation. Further, . . . Bass' program participation does not negate the fact that he still lacks insight into his criminal behavior and minimizes his conduct. The Board further notes that while acknowledging the serious consequences of his criminal activity is a step towards rehabilitation, it represents only an initial effort at rehabilitation. . . . Bass' admission of guilt may help him to develop insight into the causes of his criminal behavior, but does not equate to a change in his behavior. Therefore, in assessing . . . Bass' case, the Board concurs with the determination of the . . . panel that, based on the aggregate of all relevant factors, there is substantial likelihood that he will commit another crime if released on parole at this time.

The Board also rejected Bass' argument that the panel failed to "establish a nexus between the reasons for denial" and its finding there was a substantial likelihood he will commit a crime if paroled. It concluded

> the . . . panel appropriately considered . . . Bass' entire record, including his prior criminal history, in making its determination on his suitability for parole. Of concern to the . . . panel was his three . . . prior adjudications including two . . . for [s]imple [a]ssault and that he was arrested and convicted of a new offense while on probation. . . . Bass has no employment history and a substance abuse history starting at age thirteen . . . . He committed twenty-two . . . infractions including four . . . asterisk infractions, the most recent

A-3639-18T1

committed on August 29, 2016. The Board also finds that the . . . panel appropriately considered the facts and circumstances of his case, specifically that . . . Bass and his co-defendant bludgeoned to death an [eighty-three]-year-old handicapped man and burglarized his home.

The Board rejected Bass' argument that he was denied a Board representative to aid him during the hearing or that he was deprived of due process. It found a parole counselor was present at the hearing to assist him and he was afforded due process by virtue of the hearing and because

> [t]he . . . panel carefully and thoroughly reviewed all the reports contained in the file and based its decision on the totality of the information in the administrative record. . . . Bass was given the opportunity to meet with the . . . panel and to provide information during his hearing. The . . . panel based its decision to deny parole on the factors set forth in the statutory requirements and N.J.A.C. 10A:71-3.11.

The Board rejected Bass' final argument the panel hearing became contentious and he was not permitted to answer questions. It concluded

> [p]ursuant to N.J.A.C. 10A:71-3.11(b), . . . Bass was asked appropriate questions about his offenses in a professional manner and the . . . panel afforded him a significant opportunity to speak on several points. The Board further finds that the . . . panel listened to his answers as evidenced by the follow-up questions posed by the . . . panel.

Bass raises the following arguments on appeal:

POINT I:

MR. BASS SHOULD BE IMMEDIATELY PAROLED AS THE DECISION OF THE FULL BOARD IS ARBITRARY AND CAPRICIOUS, FAILED TO CONSIDER MATERIAL FACTS, AND FAILED TO DOCUMENT THAT A PREPONDERANCE OF THE EVIDENCE INDICATES A SUBSTANTIAL LIKELIHOOD EXISTS THAT HE WILL COMMIT A NEW CRIME IF RELEASED ON PAROLE.

POINT II:

THE BOARD'S DECISION IS ARBITRARY AND CAPRICIOUS AS THE HEARING OFFICER/ BOARD PANEL VIOLATED WRITTEN BOARD POLICY BY FAILING TO ESTABLISH A NEXUS BETWEEN THE REASONS FOR DENIAL AND THE CONCLUSION THAT THERE IS A SUBSTANTIAL LIKELIHOOD THAT MR. BASS WILL COMMIT A CRIME UNDER THE LAW OF THIS STATE IF RELEASED ON PAROLE AT THIS TIME.

POINT III:

MR. BASS WAS DEPRIVED OF HIS RIGHT TO PROCEDURAL DUE PROCESS DUE TO THE BOARD'S VIOLATION OF WRITTEN BOARD POLICY.

POINT IV:

AT LEAST ONE BOARD MEMBER PARTICIPATING IN THE DELIBERATIONS OR DISPOSITION OF THE CASE HAS FAILED TO COMPLY WITH THE BOARD'S PROFESSIONAL CODE OF CONDUCT.

POINT V:

THE PAROLE BOARD UTILIZED SUBJECTIVE PSYCHOLOGICAL TERMS SUCH AS "LACK OF INSIGHT," "REMORSE," AND "MINIMIZES CONDUCT" AS THE BASIS TO DENY PAROLE RENDERING THE DECISION UNCONSTITUTIONAL ON VAGUENESS GROUNDS.

Where an appellant challenges the Board's findings, our review "focuses upon whether the factual findings made by the Parole Board could reasonably have been reached on sufficient credible evidence in the record." Trantino v. N.J. State Parole Bd., 166 N.J. 113, 199 (2001) (citing Trantino v. N.J. State Parole Bd., 154 N.J. 19, 24 (1998)). "To a greater degree than is the case with other administrative agencies, the Parole Board's decision-making function involves individualized discretionary appraisals." Id. at 201 (citing Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 358-59 (1973)). We "may overturn the Parole Board's decisions only if they are arbitrary and capricious." Ibid. "Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of circumstances." Ibid. (quoting Worthington v. Fauver, 88 N.J. 183, 204-05 (1982)). Specifically, we must decide:

> (1) whether the agency's action violates express or implied legislative policies, i.e., did the agency follow

the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Trantino, 154 N.J. at 24.]

Bass' arguments under points three and four lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). However, we add the following comments. Having reviewed the transcript of the hearing, which lasted nearly an hour and twenty minutes, it is clear to us, as it was to the Board, that Bass was afforded due process. The lengthy hearing involved detailed questioning by the panel and ample opportunity for Bass to answer questions. Moreover, the panel members did not engage in unprofessional conduct. Rather, the transcript reveals Bass had difficulty answering basic questions in a forthright manner regarding his criminal and substance abuse history, the murder, and infractions that occurred in prison, including one as recently as 2016. His conduct during the hearing mirrored the behavior observed during the psychological evaluation.

Regarding points one, two, and five, we reject Bass' arguments the Board failed to make appropriate findings of fact and that its conclusion there was a substantial likelihood Bass would commit a crime if paroled was arbitrary and

capricious. The Board's decision is supported by sufficient credible evidence in the record. R. 2:11-3(e)(1)(D).

N.J.A.C. 10A:71-3.11(b) sets forth twenty three factors the Board may consider in determining parole eligibility. "There is no requirement for the Board to consider each and every factor enumerated . . . . Rather, the Board must consider the factors applicable in each case." McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 561 (App. Div. 2002). The standard to be applied is whether the preponderance of evidence indicates a substantial likelihood the inmate will commit a crime if released on parole. Ibid. (citing Trantino, 154 N.J. at 27); N.J.S.A. 30:4-123.53(a).

The Board followed N.J.A.C. 10A:71-3.11(b) and considered: the facts and circumstances of the murder; Bass' prior offense and criminal record; the offenses he committed while incarcerated and on probation; and Bass' insufficient problem resolution, specifically lack of insight into criminal behavior, the minimization of his conduct, and failure to adequately address his substance abuse problem. The Board reached this conclusion not only by relying on Bass' institutionalization records, but also the psychological evaluation and the record of the panel hearing. The evidence preponderated in favor of denying parole and supported the sixty-month FET. The Board's reasoning was

14

supported by the credible evidence in the record and was not arbitrary or capricious.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION