NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0407-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CALVIN BASS,

     Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

November 14, 2018

APPELLATE DIVISION

Submitted October 31, 2018 – Decided November 14, 2018

Before Judges Alvarez, Reisner, and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 83-06-2420.

John Vincent Saykanic, attorney for appellant.

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Tiffany M. Russo, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

MAWLA, J.A.D.

Defendant Calvin Bass appeals from a September 7, 2017 order denying his fourth petition for post-conviction relief (PCR).  We affirm, and hold

N.J.S.A. 2A:4A-26.1(c)(1), which does not authorize the waiver to adult court of a juvenile under the age of fifteen, has no retroactive application where a defendant's conviction and sentence have been adjudicated with finality.

The following facts are taken from the record. In March 1983, defendant and two other minors were arrested for entering the home of an elderly man and fatally beating him with a wooden nail-studded board to near decapitation, while he lay in bed. Defendant was fourteen years and one month old at the time of the arrest. He was found in possession of the wooden board, as well as two color televisions and an eight-track player belonging to the victim.

Following a competency hearing, the Family Part judge granted the State's motion to waive jurisdiction pursuant to N.J.S.A. 2A:4A-26. Subsequently, a jury convicted defendant of first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); second-degree burglary, N.J.S.A. 2C:18-2(b)(2); first-degree robbery, N.J.S.A. 2C:15-1(b); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d).

Defendant was sentenced to life imprisonment with thirty years of parole ineligibility for the first-degree felony murder conviction, and ten years with

five years of parole ineligibility for the second-degree burglary—which ran consecutively. Defendant was sentenced to eighteen months each on the fourth-degree unlawful possession of a weapon and third-degree possession of a weapon for an unlawful purpose, which ran concurrently with the felony murder and burglary sentences. All other charges were merged. Defendant's aggregate sentence was life imprisonment with thirty-five years of parole ineligibility.

Defendant appealed from his conviction and sentence, and we affirmed. State v. Bass, No. A-0056-84 (App. Div. Sept. 26, 1986) (slip op. at 10). The Supreme Court denied certification. State v. Bass, 107 N.J. 70 (1987).

Defendant's first PCR petition was denied without an evidentiary hearing in 1988. He did not appeal from the denial, but filed a federal writ of habeas corpus, which was dismissed. Defendant's second PCR petition was denied, and we affirmed on appeal. State v. Bass, No. A-5963-95 (App. Div. Jan. 22, 1998) (slip op. at 2). The Supreme Court denied certification. State v. Bass, 153 N.J. 404 (1998). Defendant filed a second federal writ of habeas corpus, which was terminated on March 12, 1999.

In June 2011, defendant filed a third PCR petition, which was denied. He subsequently filed a third federal writ of habeas corpus, which was denied in October 2013.

The matter currently on appeal arises from defendant's fourth PCR petition, filed in February 2017. In his petition, defendant argued the revised waiver statute, N.J.S.A. 2A:4A-26.1(c)(1), enacted in 2015, should be applied retroactively to his case. Defendant challenged his sentence and argued it was tantamount to a life sentence without parole, and thus, illegal. Defendant also argued his subsequent rehabilitation during incarceration refuted the sentencing judge's finding defendant was not amenable to rehabilitation.

The PCR judge issued a written opinion denying defendant's petition without an evidentiary hearing. Reviewing the plain language of N.J.S.A. 2A:4A-26.1(c)(1), the PCR judge found no express language permitting the retroactive application of the statute. Referencing our decision in State in Interest of J.F., 446 N.J. Super. 39, 56 (App. Div. 2016), where we applied the statute retroactively, the judge concluded the ameliorative purpose of the revised waiver statute was procedural in nature and did not "affect a criminal penalty." The judge found there was no expectation the revised statute would apply to defendant because he had already been

> waived, indicted, tried, and sentenced nearly [thirty-three] years before the revision came into effect. His conviction and sentence were affirmed. He filed three PCR petitions which were denied and affirmed on appeal. He has filed three times for a federal writ of habeas corpus which were then respectively dismissed, terminated, and denied.

The judge concluded:

> While the majority in [J.F.] makes a compelling argument for why N.J.S.A. 2A:4A-26.1 should apply retroactively in that particular case, its instruction to the lower courts is unclear as to how it would apply to an aged, [extensively] litigated case such as the one before this court. In light of that ambiguity, the preference for applying new laws prospectively must control, as should a plain language reading of the statute, which does not expressly mention retroactivity.

The PCR judge rejected defendant's arguments regarding his sentence.

He concluded:

> Defendant's sentence is not functionally equivalent to life without parole: his parole disqualifier is [thirty-five] years. He is, in fact, currently scheduled for a parole board hearing on September 1, 2018, at which time he will be [forty-nine] years old. Pursuant to the life expectancy chart adopted for use in the New Jersey Courts, [defendant] is currently expected to live another 32.2 years. [Life Expectancies for All Races and Both Sexes, Pressler & Verniero, Current N.J. Court Rules, Appendix I-A, www.gannlaw.com (2017).]

The PCR judge rejected defendant's claim that his rehabilitation during incarceration warranted revisiting his sentence, because there was no means for the sentencing judge to consider defendant's rehabilitation as a factor. The judge concluded defendant's rehabilitation was a consideration for the parole board. This appeal followed.

On appeal, defendant raises the following arguments:

POINT I

THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF SINCE N.J.S.A. 2A:4A-26.1(c)(1), WHICH PROVIDES THAT A JUVENILE CANNOT BE WAIVED TO THE LAW DIVISION UNLESS THE STATE CAN ESTABLISH THAT THE JUVENILE WAS 15 YEARS OF AGE OR OLDER AT THE TIME OF THE DELINQUENT ACT, APPLIED RETROACTIVELY TO THE DEFENDANT'S CASE, IN WHICH HE WAS 14 YEARS OLD AT THE TIME OF THE OFFENSE IN QUESTION.

POINT II

THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO CORRECT AN ILLEGAL SENTENCE UNDER [RULE] 3:21-10(b)(5) AS THE SENTENCE VIOLATES THE EIGHTH AMENDMENT PROHIBITION AGAINST [THE] CRUEL AND UNUSUAL PUNISHMENT CLAUSE, FOURTEENTH AMENDMENT DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION, AND THE NEW JERSEY CONSTITUTION'S CRUEL AND UNUSUAL PUNISHMENT CLAUSE. (N.J. CONST. ARTICLE I, PARAGRAPH 12).

POINT III

THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF/MOTION TO CORRECT AN ILLEGAL SENTENCE AS HE HAS BEEN REHABILITATED CONTRARY TO THE SENTENCING JUDGE'S DETERMINATION THAT DEFENDANT COULD NOT BE REHABILITATED.

I.

"Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." State v. Goodwin, 173 N.J. 583, 593 (2002) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). The process affords an adjudged criminal defendant a "last chance to challenge the fairness and reliability of a criminal verdict[.]" State v. Nash, 212 N.J. 518, 540 (2013) (internal quotations and citations omitted); see also Rule 3:22-1. "Post-conviction relief is neither a substitute for direct appeal, [Rule] 3:22-3, nor an opportunity to relitigate cases already decided on the merits, [Rule] 3:22-5." Preciose, 129 N.J. at 459; see also State v. Echols, 199 N.J. 344, 357 (2009).

"[W]here the [PCR] court does not hold an evidentiary hearing, we may exercise de novo review over the factual inferences the trial court has drawn from the documentary record." State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014) (citing State v. Harris, 181 N.J. 391, 420-21 (2004)). Thus, if warranted, we may "conduct a de novo review of both the factual findings and legal conclusions of the PCR court." Ibid. (citing Harris, 181 N.J. at 421 (emphasis omitted)).

A petition for PCR may be granted upon the following grounds:

> (a) Substantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey;

(b) Lack of jurisdiction of the court to impose the judgment rendered upon defendant's conviction;

(c) Imposition of sentence in excess of or otherwise not in accordance with the sentence authorized by law if raised together with other grounds cognizable under paragraph (a), (b), or (d) of this rule. Otherwise a claim alleging the imposition of sentence in excess of or otherwise not in accordance with the sentence authorized by law shall be filed pursuant to [Rule] 3:21-10(b)(5).

(d) Any ground heretofore available as a basis for collateral attack upon a conviction by habeas corpus or any other common-law or statutory remedy.

[R. 3:22-2.]

Furthermore, "[a] truly illegal sentence can be corrected at any time." State v. Zuber, 442 N.J. Super. 611, 617 (App. Div. 2015), rev'd on other grounds, 227 N.J. 422 (2017) (internal citations and quotations omitted). "A sentence is illegal if it 'exceeds the maximum penalty provided in the Code for a particular offense,' is 'not imposed in accordance with law,' or fails to include a mandatory sentencing requirement." State v. Locane, 454 N.J. Super. 98, 117 (App. Div. 2018) (quoting State v. Acevedo, 205 N.J. 40, 45 (2011)). "Whether [a] defendant's sentence is unconstitutional is an issue of law subject to de novo review." Zuber, 442 N.J. Super. at 618 (citing State v. Pomianek, 221 N.J. 66, 80 (2015)).

A-0407-17T4

II.

Defendant argues the PCR judge erred in failing to apply N.J.S.A. 2A:4A-26.1(c)(1) retroactively pursuant to J.F. because federal law and fundamental principles of fairness favor a retroactive application of the waiver statute.  We disagree.

In J.F., we undertook a detailed analysis of the revised waiver statute and affirmed a trial court's denial of a waiver request involving a murder allegedly committed by a fourteen-year-old child.  446 N.J. Super. at 41-42. The trial court in J.F. found "strong and compelling prospects for rehabilitation substantially outweigh[ed] the standard of the attenuated argument of deterrence in the case."  Id. at 51 (internal quotations omitted).  The trial judge made the waiver decision on August 13, 2015, three days after the Governor signed the revised waiver statute into law.  Id. at 52.  The trial judge did not apply the new statute, which would become effective March 1, 2016.  Ibid.

Following the submission of supplemental briefs, we addressed whether N.J.S.A. 2A:4A-26.1(c)(1) barred waiver of J.F. for prosecution as an adult because he was under the age limit prescribed by the statute.  Id. at 53.  We noted, "[u]nder the revised waiver statute, a juvenile cannot be waived to the Law Division unless the State can establish that 'the juvenile was [fifteen] years of age or older at the time of the delinquent act.'"  J.F. at 52-53 (citing

N.J.S.A. 2A:4A-26.1(c)(1)). We concluded the revised statute applied to J.F. because the new statute

> ameliorate[d] the punitive sentencing previously meted out to adolescent offenders after waiver. The legislative action was also intended to address the treatment needs of children. The increase in the minimum waiver age is part of that emphasis on rehabilitation rather than punishment, a part of the effort to ensure that children do not become prey to adult inmates nor suffer the many societal consequences of an adult criminal record.
>
> [Id. at 55 (footnotes omitted).]

Furthermore, we noted "[t]he State ma[de] no argument that it would suffer an 'unconstitutional interference with [a] vested right[] or a manifest injustice.'" Id. at 56 (quoting Ardan v. Bd. of Review, 444 N.J. Super. 576, 589 (2016)). "Retroactively applying the age requirement of the revised waiver statute would impose no 'unfairness [or] inequity.'" Id. at 56-57 (alteration in original) (citing Oberhand v. Dir., Div. of Taxation, 193 N.J. 558, 572 (2008)). We also noted if we had disagreed with the trial judge's waiver decision, a new hearing on remand would have required the judge to apply the revised waiver statute, which had become effective. Id. at 57.

Additionally, we held the savings statute, N.J.S.A. 1:1-15, supported the retroactive application of the revised waiver statute because of considerations regarding "utilization of [the] more lenient sentencing provisions enacted prior

10

to the imposition of the penalty." Ibid. (citing N.J.S.A. 1:1-15). We relied on our decision in State in Interest of C.F., 444 N.J. Super. 179 (App. Div. 2016). Id. at 57-58.

In C.F., the defendant had committed felony murder when he was a juvenile, but was not discovered as the perpetrator until DNA evidence connected him to the crime thirty-four years later when the defendant was fifty-one years of age. 444 N.J. Super. at 181-82. We affirmed a trial judge's imposition of the current sentencing law, pursuant to the savings statute, rather than the law in effect at the time of the offense, because although "C.F. 'committed' his offense in 1976[,] [he] did not 'incur' a penalty until 2013." Id. at 189. We stated the need to deter future criminal conduct and the need to rehabilitate the offender were "not necessarily served by imposing a penalty society no longer deems proper." Id. at 190. "In this sense [we] recognized that an 'ameliorative' statute 'may be applied retroactively.'" Ibid. (citations omitted). Therefore, we concluded the "presumption in favor of application of a subsequent ameliorative statute warrant[ed] our affirmance of [the trial judge's] decision to apply the sentencing laws in effect at the time he incarcerated C.F., and not the harsher law on the books when the murder was committed." Id. at 191.

A-0407-17T4

Adopting this logic, in <u>J.F.</u>, we concluded "[f]or the very reasons expressed in <u>C.F.</u>, the current age provision should be applied to a juvenile such as J.F. who, under the revised statute, would no longer face the possibility of waiver as a result of any offenses he committed as a fourteen-year-old." <u>J.F.</u>, 446 N.J. Super. at 58. In this sense, we held the savings statute rendered the revised waiver statute to be more than merely a procedural device because its application in the event we remanded for a new hearing "would control that hearing." <u>Id.</u> at 58-59.

In <u>J.F.</u>, our concurring colleague, Judge Gilson, noted he did not join the part of the majority opinion that retroactively applied the revised waiver statute because the affirmance of the trial judge's decision to deny a waiver on separate grounds completely resolved the appeal. <u>Id.</u> at 59-60. Moreover, Judge Gilson noted the Legislature had been silent on the issue of retroactive application of the revised statute. <u>Id.</u> at 60. Judge Gilson's concurrence also posed questions which are now raised by the parties and facts of this case. Judge Gilson stated:

> Although the majority would apply the revised statute retroactively to this appeal, it does not clarify whether the revised statute applies in other circumstances. For example, does the revised statute apply to a case where the juvenile has already been waived to adult court and the trial is pending or has actually begun? Does the revised statute apply to a case where the

juvenile was waived to adult court, was convicted, and is pending sentencing or appeal?

[Ibid.]

Defendant urges us to answer these questions in the affirmative. However, we are of a different view.

Subsequent to our decision in J.F., the Supreme Court in State in Interest of N.H., 226 N.J. 242 (2016), addressed whether a juvenile was entitled to discovery prior to a waiver hearing. The Court stated: "On a number of prior occasions, we have recognized how important waiver hearings are. They mark a critical stage in juvenile proceedings and have significant, long-lasting consequences." Id. at 245. The Court further noted: "Existing case law highlights how important the juvenile waiver decision is. As this Court observed decades ago, the waiver of a juvenile to adult court 'is the single most serious act that the [Family Part] can perform.'" Id. at 252 (citation omitted). For "once waiver occurs, the child loses the protections and opportunities for rehabilitation which the Family Part affords. The child also faces the real possibility of a stiffer adult sentence." Ibid. (citations omitted).

Therefore, despite its procedural characteristics, a juvenile waiver is a profoundly consequential event as it relates to the adjudication and rehabilitation of a juvenile defendant. To that end, we reject the State's

argument the waiver statute is purely procedural and without an ameliorative effect.

However, a reliance on the savings statute is unavailing here because the waiver law was not only the same at the time defendant committed the offense, but also at the time of his waiver, conviction, and sentencing. There is no evidence the Legislature intended the waiver statute to reach concluded cases which have already passed through the proverbial "pipeline." Therefore, our application of the savings statute in C.F.—which we also relied upon in J.F.—has its limits, as demonstrated by this case, in which defendant's direct appeal has long since been concluded.

As the State notes, those limits are demonstrated by the prejudice that would be experienced by "requiring new waiver hearings for an unknown number of individuals who had been waived up under the prior law, and the release of numerous other [individuals] who . . . have now served more time than they could have under the juvenile system." The prejudice to the State is obvious, especially in cases where a defendant has begun, but not yet completed his sentence. For example, the result suggested by the retroactive application of the waiver statute where a defendant has served ten years of a thirty year sentence would require the State to re-assemble its case to address the proper disposition under the juvenile docket a decade after the fact. We

14

discern no evidence this was the Legislature's intent when it enacted N.J.S.A. 2A:4A-26.1.

For these reasons, we affirm the PCR judge's decision not to retroactively apply N.J.S.A. 2A:4A-26.1(c)(1).  To the extent we have not addressed defendant's other arguments for the retroactive application of N.J.S.A. 2A:4A-26.1(c)(1), it is because those arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

### III.

We reject defendant's argument that his sentence was illegal because it was the functional equivalent of life without parole, and thus, warranted review pursuant to Rule 3:21-10(b)(5).  We also disagree with defendant's argument that his rehabilitation while he was incarcerated has any bearing on the legality of his sentence.

In State v. Zuber, the defendants committed serious violent crimes as juveniles.  227 N.J. 422, 428 (2017).  One defendant was serving a one-hundred and ten year sentence with fifty-five years of parole ineligibility, and another defendant was serving a seventy-five year sentence with sixty-eight years and three months of parole ineligibility.  Ibid.

The Supreme Court stated:

> In the past decade, the United States Supreme Court has sent a clear message in that regard: "children are

different" when it comes to sentencing, and "youth and its attendant characteristics" must be considered at the time a juvenile is sentenced to life imprisonment without the possibility of parole.

The Supreme Court recognized "the mitigating qualities of youth" and directed that judges in those cases consider a number of factors at sentencing, including immaturity and "failure to appreciate risks and consequences"; "family and home environment"; family and peer pressures; "an inability to deal with police officers or prosecutors" or the juvenile's own attorney; and "the possibility of rehabilitation."

We find that the same concerns apply to sentences that are the practical equivalent of life without parole, like the ones in these appeals. The proper focus belongs on the amount of real time a juvenile will spend in jail and not on the formal label attached to his sentence. To satisfy the Eighth Amendment and Article I, Paragraph 12 of the State Constitution, which both prohibit cruel and unusual punishment, we direct that defendants be resentenced and that the Miller factors be addressed at that time.

[Id. at 429 (citing Miller v. Alabama, 567 U.S. 460 (2012)).]

Moreover, the Court stated:

Miller's command that a sentencing judge "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison," applies with equal strength to a sentence that is the practical equivalent of life without parole. Defendants who serve lengthy term-of-years sentences that amount to life without parole should be no worse off than defendants whose sentences carry that formal designation.

16

[Id. at 446-47 (quoting Miller, 567 U.S. at 480).]

Here, defendant's sentence and circumstances are quite different than the concerns outlined in Zuber. Defendant is now forty-nine years of age. As the PCR judge noted, defendant's parole disqualifier was thirty-five years and he is now eligible for parole. Defendant does not dispute the judge's finding that he has a life expectancy of 32.3 years. Despite the lengthy sentence defendant has served, there are no similarities between his sentence and the sentences reviewed in Zuber.

Finally, defendant's sentence is not illegal because he now claims to be rehabilitated as a result of his incarceration. We do not minimize defendant's efforts to rehabilitate himself, which include: defendant's role as president of the Lifers Group Juvenile Awareness Program, earning a GED high school equivalency diploma, and success in various institutional programs. However, consideration of these accomplishments is exclusively the province of the parole board and not a means of collateral attack on defendant's sentence—which has been affirmed on direct appeal. State v. Bass, Docket No. A-0056-84 (App. Div. Sept. 26, 1986) (slip op. at 10).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-0407-17T4