**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4587-17T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WALIF SMITH,

    Defendant-Appellant.

_____

Argued telephonically June 1, 2020 –
Decided July 7, 2020

Before Judges Sumners, Geiger and Natali

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 93-12-4185.

James K. Smith, Jr., Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; James K. Smith, Jr., of counsel and on the briefs; Stephen William Kirsch, on the briefs).

Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens II, Acting Essex

County Prosecutor, attorney; Frank J. Ducoat, of counsel and on the brief).

PER CURIAM

Defendant Walif Smith robbed and murdered an elderly woman as a juvenile. After being waived to adult court and convicted by a jury, he was sentenced to a life term with a thirty-year parole-bar. In 2017, Smith moved to correct an illegal sentence under State v. Zuber, 227 N.J. 422 (2017). The court denied his motion finding Smith's sentence was not the functional equivalent of life without parole. Smith challenges that decision in this appeal.

Additionally, Smith claims for the first time that he was fourteen years old when he committed his crimes. He argues that N.J.S.A. 2A:4A-26.1(c)(1) (the revised waiver statute), which increased the minimum age for waiver to adult court from fourteen to fifteen years old, should be applied retroactively to his case. If this were the case, Smith would be resentenced as a juvenile in the Family Part because the revised waiver statute does not permit fourteen-year-old offenders to tried and sentenced as adults. Smith also argues that the possibility of being paroled is an inadequate remedy for what he labels a de facto life sentence.

We hold that the revised waiver statute does not apply retroactively to Smith, who was waived to adult court, convicted by a jury, and sentenced long

2

before the revision became effective.  We further hold that his life term with a thirty-year parole-bar is not the functional equivalent of life without parole and does not violate the Eighth Amendment's prohibition of cruel and unusual punishment.  Accordingly, we affirm.

I.

In 1990, Smith approached a seventy-nine-year-old woman in her car, robbed her, and shot her in the head.  Smith was indicted in 1993 on charges of murder, felony murder, first-degree armed robbery, third-degree unlawful possession of a handgun, and second-degree possession of a handgun with an unlawful purpose.

Smith was waived by the Family Part judge to adult court pursuant to the prior waiver statute, N.J.S.A. 2A:4A-26(a).  A jury convicted Smith of felony murder, the lesser included offense of aggravated manslaughter, armed robbery, and the two weapons offenses.  After merging the robbery, aggravated manslaughter, and possession of a weapon with an unlawful purpose counts into the felony murder, the trial court sentenced Smith to life imprisonment with a thirty-year parole-bar and a concurrent four-year term for the unlawful possession of a weapon.  The judgment of conviction was entered on November 9, 1994.

A-4587-17T2

Notably, the presentence report twice lists Smith's date of birth as being in February 1975 in two separate places. During the sentencing hearing, defense counsel stated he had no exceptions to the report. The judgment of conviction likewise lists a date of birth in February 1975. The offenses occurred on September 21, 1990. Thus, according to the presentence report and judgment of conviction, Smith was fifteen years old when he committed the murder.

Smith challenged his conviction and sentence on direct appeal, and we affirmed. State v. Smith, No. A-4621-94 (App. Div. Feb. 18, 1997). The Supreme Court denied certification. State v. Smith, 151 N.J. 72 (1997). We detailed the crimes, Smith's subsequent conduct, statements, and the investigation conducted by the police in that opinion and need not repeat them here. Smith, slip op. at 2-10. Smith argued that his sentence "was manifestly excessive and unsupported by a proper weighing of aggravating and mitigating factors." Id. at 11. We rejected this argument, finding it meritless. Id. at 20.

In 2007, Smith filed a petition for post-conviction relief (PCR), claiming ineffective assistance of trial and appellate counsel. The PCR court denied his petition on the merits. We affirmed. State v. Smith, No. A-1651-07 (App. Div. Jan. 2, 2009). The Supreme Court denied certification. State v. Smith, 199 N.J. 132 (2009).

A-4587-17T2

In March 2013, Smith filed a pro se petition to vacate or correct his sentence pursuant to Miller v. Alabama, 567 U.S. 460 (2012). Defense counsel was appointed to represent him. Smith claimed his sentence was illegal and violated the Eighth Amendment, arguing the sentencing judge failed to conduct the proportionality analysis required by Miller. Specifically, Smith claimed the judge failed to consider his youth and did not adequately account for his "less developed brain and lack of maturity" when imposing a life sentence.

The trial court heard oral argument in June 2013. Defense counsel argued Miller rendered N.J.S.A. 2C:11-3(b) unconstitutional because it requires the sentencing court to impose a period of parole ineligibility of no less than thirty years, thereby preventing the court from individualizing or tailoring the sentence specifically to a juvenile. Counsel also argued Miller should be applied retroactively because it is based upon the Eighth Amendment's "fundamental right to be free of cruel and unusual punishment" and did not establish a new rule of law.

The State argued Miller did not apply retroactively to Smith's sentence because it establishes a new procedural, rather than substantive, rule of law. It also maintained that Smith's sentence was appropriate under the totality of the circumstances.

A-4587-17T2

The court entered an August 21, 2013 order, accompanied by written decision, denying the petition. It found <u>Miller</u> inapplicable because Smith "was not sentenced to a mandatory life sentence without the possibility of parole," but rather would "be eligible for parole thirty (30) years from his sentencing date." The court further found the sentencing court had considered Smith's youth, his sentence was "grounded in competent, reasonably credible evidence," and concluded the sentence did "not shock the conscience."

Smith appealed, raising numerous issues challenging the constitutionality of mandatory sentences imposed on juvenile offenders. We found Smith's arguments lacked merit and affirmed substantially for the reasons expressed by the trial court. <u>State v. Smith</u>, A-0679-13 (App. Div. Jan. 8, 2016). The Supreme Court denied certification. <u>State v. Smith</u>, 225 N.J. 339 (2016). We added the following comment:

> The Court's decision [in <u>Miller</u>] did not . . . prohibit the mandatory imposition of a term-of-years sentence for juvenile offenders, nor did it prohibit the discretionary imposition of a life sentence with a mandatory period of parole ineligibility for juveniles, as was the case here.
>
> Unless we are confronted with a court sentencing a juvenile offender to a mandatory term of life without the possibility of parole, the constitutional infirmities identified in <u>Miller</u> do not apply.

6

[Id., slip op. at 10 (citations omitted).]

In May 2017, Smith moved to correct an illegal sentence pursuant to Zuber. Although initially agreeing that Smith was entitled to a new sentencing hearing under Zuber, the motion court ultimately reached the opposite conclusion, issuing an April 20, 2018 oral decision and order denying the motion. This appeal followed.

The appeal was scheduled for hearing on a sentencing oral argument calendar, but at Smith's request, we transferred it to a plenary calendar and allowed him to amend his notice of appeal. Smith then submitted a certified copy of a birth certificate indicating he was born in February 1976, making him fourteen at the time of his crimes. Smith's amended notice of appeal included a challenge to his sentence as unlawful under the revised waiver statute.

Smith raises the following points for our consideration.

POINT I

THE 2015 STATUTE, N.J.S.A. 2A:4A-26.1(c)(1), WHICH CHANGED THE AGE TO 15-PLUS FOR WAIVER FROM JUVENILE TO ADULT COURT, RETROACTIVELY APPLIES TO DEFENDANT'S CASE; CONSEQUENTLY, A JUVENILE SENTENCING PROCEEDING SHOULD BE SCHEDULED AND DEFENDANT SENTENCED AS A JUVENILE OFFENDER, AND HIS ILLEGAL ADULT CONVICTIONS AND SENTENCES SHOULD BE VACATED.

A. The New Jersey Juvenile-Waiver Changes are Clearly Ameliorative; For Either of Two Separate Reasons, the "Savings Statute," N.J.S.A. 1:1-15, Mandates Retroactive Application of the 15-Plus Waiver Rule to Defendant's Case, Fundamental Fairness Requires the Same Result.

(1) The New Juvenile Waiver Statute, Especially the New Prohibition on Waiver of Under-15-Year-Olds, is Plainly an Ameliorative Correction to the Prior Waiver Statute.

(2) Because the Recently-Enacted Restriction in the New Juvenile-Waiver Statute – Regarding Waiver Only of Those 15 or Older at the Time of the Offense – Merely Limits the Circumstances in Which Transfer of the Cases From the Chancery Division to the Law Division May Occur, It Addresses a "Mode of Procedure" in the Case, and, Thus, Should be Applied Retroactively to Defendant.

(3) Alternatively, Even if the 15-Plus Waiver Rule is Viewed as a Direct Change to an "Offense Committed" or a "Penalty . . . Incurred," It Should Be Retroactively Applied to Defendant's Case. Even if this Court views the 15-Plus Change in the Waiver Statute to be a Direct Change to Liability and/or Penalty for Juveniles Rather Than a Procedural Change as in Y.S., that Statutory Change Should Still be Retroactively Applied to Defendant's Case Under the Savings Statute. As Noted, the First Portion of the Savings Statute Has Been Interpreted – Despite its Strict-Sounding Language (i.e., that there Should be No retroactivity "Unless it is Expressly Declared in the (New) Act") – to Mandate that a Statute be Applied Retroactively

8

When the "Expression of Legislative Intent" is "Either Express . . . or Implied[;] that is, [When] Retroactive Application May be Necessary to Make the Statute Workable or to Give it the Most Sensible Interpretation." [Gibbons v. Gibbons, 86 N.J. 515, 522 (1981)].

B. The Proper Remedy Is to Vacate the Illegal Adult Conviction and Sentence, Transfer the Matter to the Chancery Division, Convert the Finding of Guilt to a Finding of Delinquency on Those Same Counts, and Set a Date for Sentencing as a Juvenile Matter.

POINT II

PURSUANT TO THE PRINCIPLES SET FORTH IN STATE V. ZUBER, JUVENILE OFFENDERS SUCH AS WALIF SMITH WHO ARE SERVING LIFE SENTENCES SHOULD BE RESENTENCED AND GIVEN THE OPPORTUNITY TO DEMONSTRATE THAT THEY HAVE BEEN REHABILITATED AND ARE AMENDABLE TO RELEASE FROM PRISION.

II.

We first address the retroactivity of the revised waiver statute. In August 2015, the Legislature repealed the juvenile waiver statute and replaced it with the revised statute, effective March 1, 2016. L. 2015, c. 89, §§ 1-7.

Smith argues the revised waiver statute, which precludes waiver to adult court of juveniles fourteen or less at the time of their crimes, should retroactively apply to him because: (1) it is an ameliorative statute intended to remedy in

9

subjecting young offenders to harsh adult punishment; and (2) it changes the procedure by which juveniles are transferred to adult court, thus entitling it to retroactive application under N.J.S.A. 1:1-15 (the Savings Statute). He also claims that it would be cruel to deny retroactive application of the statute. Smith does not seek a new trial but requests his conviction be converted to a delinquency adjudication and that he be resentenced as a juvenile by the Family Part.

The State claims that we should not address this argument because Smith raised it for the first time on appeal and questions the authenticity of Smith's purported birth certificate. We note that Smith previously moved for final remand or, in the alternative, to supplement the record. We entered a November 19, 2018 order allowing Smith to file an amended notice of appeal "raising the retroactivity issue." However, the State is correct when it asserts that no court has determined Smith's actual date of birth.

Our Supreme Court's recent opinion in State v. J.V., ___ N.J. ___ (2020), resolves whether the revised waiver statute should be applied prospectively or retroactively.[1] The Court held that the statute only applies prospectively "to

_____

[1] We have considered the letters submitted by the parties pursuant to Rule 2:6-11(d), calling the court's attention the significance of J.V., issued after the submission of their briefs.

those juvenile waiver proceedings conducted after the statute's effective date." Id., slip op. at 15.

In April 2013, J.V., then seventeen years old, robbed and repeatedly stabbed a man, causing serious injuries. Id. at 3. J.V. was charged with acts of delinquency which, if committed by an adult, would have constituted attempted murder, armed robbery, and two weapons charges. Id. at 4-5. In October 2013, the State's motion to waive J.V. to adult court was granted and he subsequently pled guilty to attempted murder and robbery and was sentenced in September 2015. Id. at 6-7.

The Court noted that "[g]enerally, new criminal statutes are presumed to have solely prospective application." Id. at 13. "To overcome the presumption of prospective application, we must find the 'Legislature clearly intended a retrospective application' of the statute . . . ." Id. at 14 (quoting Weinstein v. Inv'rs Sav. & Loan Ass'n, 154 N.J. Super. 164, 167 (App. Div. 1977). The Court recognized the "three exceptions to the presumption of prospective application of a new law," but explained that "we look to those exceptions only in instances 'where there is no clear expression of intent by the Legislature that the statute is to be prospectively applied only.'" Id. at 14-15 (quoting Gibbons v. Gibbons, 86 N.J. 515, 522 (1981)).

A-4587-17T2

The Court noted that the revised waiver statute "was not made effective immediately, but instead, became effective on March 1, 2016, which was "years after J.V. was waived to adult court." Id. at 2, 7 (citing L. 2015, c. 89, § 7). The Court found this "is clear evidence that the Legislature intended the statute to apply prospectively only." Id. at 15.

"Based on the plain and unambiguous language of the statute, [the Court found] the Legislature intended to afford Section 26.1(c)(3) only prospective application to those juvenile waiver proceedings conducted after the [revised] statute's effective date." Id. at 15. Therefore, the revised waiver statute does not apply to "a juvenile who was waived to adult court, pled guilty, and was sentenced long before Section 26.1 became effective." Id. at 21. Consequently, the Court determined it "need not consider the exceptions to the presumption of prospective application," or "the parties' Saving Statute arguments." Id. at 16, 21.

Smith murdered his victim on September 21, 1990. He was waived to adult court in August 1993; indicted in December 1993; arrested in January 1994; found guilty by a jury in October 1994; and sentenced on November 9, 1994. Since Smith was waived to adult court, convicted, and sentenced long before the revised waiver statute became effective, the revised waiver statute

does not apply to him.  Id. at 21.[2]  Accordingly, there is no basis to convert his conviction to a delinquency adjudication or to remand for resentencing by the Family Part.

III.

We next address Smith's contention that the motion court erred in denying resentencing under Zuber and Miller.  He claims that juvenile offenders "serving life sentences should be resentenced and given the opportunity to demonstrate that they [are] rehabilitated and are amendable to release from prison."

Smith claims he is not the same violent young man that he was thirty years ago when he committed his crimes.  He asserts that at a resentencing hearing, he would present material information regarding the circumstances of his childhood and the factors set forth in Miller, 567 U.S. at 477.  Smith claims this would require an evidentiary hearing so that he could introduce "testimony from family members, . . . psychological or psychiatric evaluations, and . . . prison disciplinary and achievement records."  Absent an evidentiary hearing, he will be denied "some meaningful opportunity to obtain release based on

---

[2]  Consequently, we need not address whether Smith was fourteen when he committed the crimes, as it does not affect the outcome of this appeal.

demonstrated maturity and rehabilitation." Zuber, 227 N.J. at 443 (quoting Graham v. Florida, 560 U.S. 48, 75 (2010)).

Relying on State v. Bass, 457 N.J. Super. 1 (App. Div. 2018), the State contends Smith's life term with a thirty-year parole-bar is not the functional equivalent of a life sentence. It emphasizes that Smith will be eligible for parole in 2024 when he is forty-seven years old.

The motion court found the sentence was not an unconstitutional de facto life term because Smith will soon be eligible for parole after serving thirty years. Based on our careful review of the record, we concur.

A similar request for relief was denied in Bass, where the defendant received a life term with a thirty-five-year parole-bar. 457 N.J. Super. at 4. We affirmed the trial court's denial of a request for resentencing finding that the sentence was not the functional equivalent of life without parole. Id. at 13-14. In so holding, we rejected Bass's argument that the rehabilitative steps he had taken during incarceration rendered his sentence illegal. Id. at 14. While we did "not minimize" the numerous steps Bass took in prison to rehabilitate himself, we concluded that "consideration of these accomplishments [was] exclusively the province of the parole board and not a means of collateral attack on [a] sentence – which has been affirmed on direct appeal." Ibid.

In <u>State v. Pratt</u>, 226 N.J. Super. 307 (App. Div. 1988), the defendant was waived to adult court and convicted of murder and two weapons he committed at age fifteen. <u>Id.</u> at 308-09. The court sentenced him to a thirty-year term without parole and imposed concurrent terms for the weapons offenses. <u>Id.</u> at 309.

On appeal, Pratt argued the statutory minimum of thirty years' imprisonment without parole violated the Federal and State Constitutions because "it fails to accord individualized sentencing treatment to juveniles." <u>Id.</u> at 325. We rejected that argument, relying on <u>State v. Johnson</u>, 206 N.J. Super. 341 (App. Div. 1985), which held the statutory thirty-year mandatory minimum did not constitute cruel and unusual punishment as applied to adults. <u>Pratt</u>, 226 N.J. Super. at 324. In <u>Johnson</u>, we noted that our case law has held the mandatory term for felony murder does not exceed "what appears to be a reasonable expedient to achieve the public purpose of punishment for an egregious offense." <u>Johnson</u>, 206 N.J. Super. at 348 (citations omitted). In <u>Pratt</u> we held that the same rationale applied even where the defendant was a juvenile tried and convicted as an adult. <u>Pratt</u>, 226 N.J. Super. at 324.

Although we recognize that <u>Pratt</u> was issued years before <u>Montgomery v. Louisiana</u>, 577 U.S. ___, 136 S. Ct. 718 (2016), <u>Graham</u>, <u>Miller</u>, and <u>Zuber</u>, it

is directly on point and remains good law as to prison terms that are not the substantial equivalent of life without parole. A thirty-year parole-bar is far from a life sentence without eligibility for parole, particularly as applied to a juvenile offender who will be eligible for parole when he is forty-seven years old. In the absence of a premature death, Smith will have an opportunity to experience some meaningful years outside of prison.[3] See Graham, 560 U.S. at 73.

---

[3] Smith's sentence stands in stark contrast to the sentences imposed on the juvenile offenders in Miller, Montgomery, Graham, and Zuber. In Miller, the juvenile offender was sentenced to mandatory life without parole. 567 U.S. at 465. In Montgomery, the juvenile offender was likewise sentenced to life without parole. 136 S. Ct. at 726. In Graham, the juvenile offender was sentenced to life for armed burglary and fifteen years for attempted armed robbery, which gave him "no possibility of release unless he is granted executive clemency" because "Florida has abolished its parole system." 560 U.S. at 57. In Zuber, our Supreme Court summarily remanded the juvenile offender's consecutive prison sentences aggregating 150 years, subject to a seventy-five-year aggregate parole-bar, for a first resentencing. State v. Zuber, 111 N.J. 650 (1988). At the first resentencing in 1988, the trial court revised Zuber's sentence to an aggregate term of 110 years, with a fifty-five-year parole bar; we affirmed the revised sentence. State v. Zuber, 442 N.J. Super. 611, 614, 635 (App. Div. 2015). The Supreme Court reversed and remanded, holding that the revised sentence should be analyzed as one that is the functional equivalent of life without parole, and remanded for the trial court to reconsider Zuber's lengthy sentence in light of the Miller factors. Zuber, 227 N.J. at 450-53. On remand, the trial court resentenced Zuber to an aggregate term of eighty-six years, with an aggregate forty-three-year parole-bar. We remanded for a third resentencing because the sentencing court did not adequately explain its basis for imposing consecutive terms under a heightened State v. Yarbough, 100 N.J. 627 (1985) standard. State v. Zuber, No. A-2677-18 (App. Div. May 6, 2020) (slip op. at 4, 38-40). We did not decide whether the sentence imposed was the functional

We adhere to our analysis and holdings in <u>Bass</u> and <u>Pratt</u> and reach the same conclusion here. Smith's life sentence with the statutory minimum thirty-year parole-bar is not the functional equivalent of life without parole. As correctly noted by the State, Smith will be eligible for parole in February 2024, when he is forty-seven years old. We recognize that <u>Zuber</u> rejected the use of general life-expectancy tables to determine whether a sentence amounts to life without parole. <u>Zuber</u>, 227 N.J. at 450. We are nevertheless unpersuaded that the prospect for release on parole before the age of fifty is tantamount to a life sentence without parole.

Smith acknowledges our holding in <u>Bass</u> but argues the mere possibility of parole "is insufficient" to remedy the alleged sentencing error. He argues that in determining whether an inmate is fit for release, the Parole Board "would have virtually no knowledge about the offender's life and family situation at the time of the offense." We disagree.

In <u>Graham</u>, the Court made clear that "[a] State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that

---

equivalent of life without parole. We are not aware of any published or unpublished appellate opinion in this State that has found a life term with a thirty-year parole-bar to be the functional equivalent of life imprisonment.

term." 560 U.S. at 82. As we have noted, Smith is eligible for parole in less than four years.

"The statutory minimum sentence for felony murder is thirty years with thirty years of parole ineligibility; the maximum is a term of years between thirty years and life imprisonment with a mandatory thirty[-]year parole ineligibility period." State v. McQuaid, 147 N.J. 464, 496 (1997) (citing N.J.S.A. 2C:11-3(b)). Smith's sentence falls within the permissible sentencing range. No court has held that N.J.S.A. 2C:11-3(b) is unconstitutional because it requires the sentencing court to impose a period of parole ineligibility of thirty years. We decline to do so.

While we recognize that Zuber affords an opportunity to a juvenile offender to seek relief from a sentence that is the practical equivalent of life without parole, the Court did not address whether a juvenile offender sentenced without consideration of the Miller factors to a lengthy parole-bar that is not the practical equivalent of life without parole, may seek relief from his sentence other than parole. Instead, the Court "ask[ed] the Legislature to consider enacting a scheme that provides for later review of juvenile sentences with lengthy periods of parole ineligibility, and to consider whether defendants should be entitled to appointed counsel at that hearing." Zuber, 227 N.J. at 453.

The court deferred the question of imposing "a maximum limit on parole ineligibility for juveniles of thirty years" to the Legislature. Ibid.

The Legislature has previously considered this very issue but has not yet enacted any legislation on point. See A. 1233 (2018) (a bill that would allow a juvenile sentenced to twenty years or more without parole to petition for resentencing ten years after conviction and to be eligible for parole after twenty years of incarceration); S. 3079 (2017), reintroduced as, S. 428 (2018) (allowing a juvenile sentenced to thirty years or more without parole to petition for review of the sentence after thirty years of incarceration if convicted of murder and twenty years for all other crimes).

Most recently, two bills have been introduced that would reform the sentencing of youthful offenders. See S. 2592 (2020) (allowing a sentencing court to consider the age of a youthful defendant as a mitigating factor); S. 2591 (2020) (requiring the Commissioner of the Department of Corrections to issue a Certificate of Eligibility for Resentencing to any inmate who committed a crime as a juvenile, was waived to adult court, received an aggregate prison term of thirty years or longer, has served at least twenty years of that sentence, and has not been resentenced or previously sought such relief).

We reject the notion that a juvenile offender serving a life term with a thirty-year parole-bar is automatically entitled to an evidentiary hearing, before his initial parole eligibility date, without proffering any facts or evidence supporting his claim that he should be released from prison early to comply with Miller. We do not view Zuber as requiring an evidentiary hearing without first presenting a prima facie case for such relief. The juvenile offender must present more than bald, unsupported assertions in his moving papers. We hold the juvenile offender must establish a prima facie case in support of relief under Miller before being entitled to an evidentiary hearing or resentencing.[4]

---

[4] In other contexts, a defendant seeking relief from a conviction or sentence must make a satisfactory preliminary showing to be entitled to an evidentiary hearing. A defendant seeking post-conviction relief "shall be entitled to an evidentiary hearing only upon the establishment of a prima facie case in support of post-conviction relief." R. 3:22-10(b). Similarly, "the burden rests on the defendant, in the first instance, to present some plausible basis for his request" to set aside a guilty plea. State v. Slater, 198 N.J. 145, 156 (2009) (quoting State v. Smullen, 118 N.J. 408, 416 (1990)). One factor is "[w]hether the defendant has asserted a colorable claim of innocence." Id. at 150. Courts "consider whether a defendant's assertion of innocence is more than a blanket, bald statement and rests instead on particular, plausible facts." Id. at 159. Likewise, a defendant seeking disclosure of the identity of a nonparticipant confidential informant "must advance more than the ungrounded hope that if the informer were called as a witness, he would say something which might possibly discredit other witnesses and lead to an acquittal." State v. Morelli, 152 N.J. Super. 67, 74-75 (App. Div. 1977) (citing State v. Oliver, 50 N.J. 39, 42 (1967)). The court "should not honor frivolous demands for information on unsubstantiated allegations of need." State v. Milligan, 71 N.J. 373, 393 (1976). The defense

Notably, Smith proffered no evidence of progress he has made while in prison the last twenty-six years. He submitted no proof of any programs he has completed, educational goals he has achieved, job skills he has acquired, the absence of inmate infractions, or that he is better able to deal with the factors that led to his criminality. In short, Smith has not established a prima facie case of reform, rehabilitation, or maturation in support of his claim for relief. Accordingly, he has not presented any factual basis warranting an evidentiary hearing or resentencing under Zuber.

Although we do not foreclose Smith from a future application for resentencing based on his reformation efforts, we decline to hold in the abstract whether Rule 3:21-10(b) or some other procedure would furnish such a pathway for future relief. We also do not decide here the appropriate amount of time served to justify such motions. Any such decisions should be based on a properly supported application. See R. 3:21-10(c) ("A motion filed pursuant to [Rule 3:21-10(b)] shall be accompanied by supporting affidavits and such other documents and papers as set forth the basis for the relief sought.").

---

must show that "disclosure of his identity is essential to assure a fair determination of the issues." N.J.R.E. 516.

For these reasons, we affirm the denial of Smith's motion to correct his sentence without prejudice to the possibility of a future application for relief.

In addition, to the extent Smith may have or subsequently develops evidence of achieving reformation, rehabilitation, maturation, and his fitness to return to society, he can present it to the parole board when he is eligible for parole. Bass, 457 N.J. Super. at 14; N.J.A.C. 10A:71-3.9(b), -3.11(a). The parole board is obligated to consider such evidence as part of its comprehensive evaluation of whether it is appropriate to release an inmate on parole. See N.J.A.C. 10A:71-3.11(a) (stating that "[p]arole decisions shall be based on the aggregate of all pertinent factors, including material supplied by the inmate and reports and material which may be submitted by any persons or agencies which have knowledge of the inmate"). The hearing officer, board panel and full board shall consider the twenty-three factors enumerated in N.J.A.C. 10A:71-3.11(b).[5] In addition, each "may consider any other factors deemed relevant." Ibid.

---

[5] Factors enumerated in N.J.A.C. 10A:71-3.11(b) that are pertinent here include:

> 1. Commission of an offense while incarcerated; 2. Commission of serious disciplinary infractions; 5. Facts and circumstances of the offense; 6. Aggravating and mitigating factors surrounding the offense; 7. Pattern of less serious disciplinary infractions; 8. Participation in institutional programs which could

Because Smith committed his crimes prior to August 19, 1997, "the [b]oard panel shall determine whether evidence supplied in reports or developed or produced at the hearing  indicates by a preponderance of the evidence that

have led to the improvement of problems diagnosed at admission or during incarceration. This includes, but is not limited to, participation in substance abuse programs, academic or vocational education programs, work assignments that provide on-the-job training and individual or group counseling; 9. Statements by institutional staff, with supporting documentation, that the inmate is likely to commit a crime if released; that the inmate has failed to cooperate in his or her own rehabilitation; or that there is a reasonable expectation that the inmate will violate conditions of parole; 11. Documented changes in attitude toward self or others; 12. Documentation reflecting personal goals, personal strengths or motivation for law-abiding behavior; 13. Mental and emotional health; 14. Parole plans and the investigation thereof; 17. Statements by the inmate reflecting on the likelihood that he or she will commit another crime; the failure to cooperate in his or her own rehabilitation; or the reasonable expectation that he or she will violate conditions of parole; 19. Family and marital history; 20. Statement by the court reflecting the reasons for the sentence imposed; 21. Statements or evidence presented by the appropriate prosecutor's office, the Office of the Attorney General, or any other criminal justice agency; 22. Statement or testimony of any victim or the nearest relative(s) of a murder/manslaughter victim; 23. The results of the objective risk assessment instrument.

23

there is a substantial likelihood that [Smith] will commit a crime . . . if released on parole." N.J.A.C. 10A:71-3.10(a).

Smith will thus have a full the opportunity to present relevant evidence at the board hearing and argue that he should be paroled in 2024. We therefore reject his claim that the Parole Board "would have virtually no knowledge about [his] life and family situation at the time of the offense." By any measure, the parole board will afford Smith a realistic and "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Zuber, 227 N.J. at 443 (quoting Graham, 560 U.S. at 75). If it does not grant Smith parole, he may appeal from that decision.

Defendant's remaining arguments are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4587-17T2